EDITH L. CROZIER v. HENRY L. PARTRICK.

*Trover—Demand—Evidence.*

Where, in trover for certain sheep, it appears from the testimony that after the defendant had put it out of his power to deliver the sheep to the plaintiff, by turning them over to a third person, he was twice asked for them or their equivalent in money, and finally threatened with suit, but did not comply with such request, there is sufficient evidence of demand and conversion to warrant the submission of the case to the jury.[1]

Error to Muskegon. (Dickerman, J.) Argued December 13, 1893. Decided January 5, 1894.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Jones & Clark,* for appellant.

*R. R. Gale,* for plaintiff.

HOOKER, J. The plaintiff brought trover for certain sheep, which the parties seem to concede were at one time in the defendant's possession. The only question raised

---

[1] See *Aspell v. Hosbein,* 98 Mich. 117, and note, on the question when a demand is and when it is not necessary before bringing trover or replevin.

seems to be that no demand for the sheep and refusal had been proved upon the trial. The proof upon that subject is as follows:

"I have been acquainted with the plaintiff, Edith L. Crozier, for a year or more, and during that time have acted as her agent in the matter of a deal she had with Mr. Partrick, the defendant, in relation to some sheep.

"*Q.* Did you ever, as her agent, make a written or oral demand on Mr. Partrick for those sheep?

"*A.* An oral demand.

"*Q.* When was that?

"*A.* Well, it was along in the summer, prior to the time of the commencement of this suit in justice's court.

"*Q.* Would you say, then, that it was last summer?

"*A.* I don't remember the month.

"*Q.* How long do you think before the suit was commenced?

"*A.* Oh, I had two conversations with him. My judgment is that one was in the spring and the other in the summer.

"*Q.* Of what year?

"*A.* I think it was last year.

"*Q.* What did Mr. Partrick say when you made a demand on him for those sheep?

"*A.* He said that he had settled with her father.

"*Q.* Did he or did he not refuse to deliver them to you or to Mrs. Crozier?

"*A.* He said he had let the old gentleman, Mr. Lindsay, have the sheep, and said Lindsay would tell me so. That was the first conversation.

"*Q.* Did you have the authority from Mrs. Crozier to act for her in making this demand?

"*A.* Yes, sir; had the contract,—the agreement."

The witness also testified that at that time he was practicing law, and was acting as attorney for Mrs. Crozier in this case when pending in the justice's court.

"*Q.* Will you tell what kind of a demand was made,— what you said at the time the demand was made?

"*A.* The first time I saw him was down at the depot in this city,—near the depot. I showed him the agreement, and told him Mrs. Crozier wanted her sheep, or the equivalent in money. He told me that he had nothing to do

with her; that he had settled with her father. I know I told him I would write to her father, or see him, and I would do nothing about it until I found out.

" *Q.* Was there any other demand made besides the one that you testified about?

"*A.* Yes.

" *Q.* When was that?

"*A.* I saw him in Montague,—I don't know when,— before the commencement of the suit.

" *Q.* What did you say to him at that time?

"*A.* I told him that I had a letter from the old gentleman, Mr. Lindsay; and I am very positive I showed him Mr. Lindsay's letter, denying that he had ever received the sheep for his daughter, or settled the same.

" *Q.* Did you at that time again ask him for the sheep?

"*A.* Well, I don't know that I did, any further than that I told him I would have to sue him if he didn't fix up."

Upon cross-examination, the witness testified, among other things, as follows:

" *Q.* You say the first conversation you had with the defendant with regard to this demand was in Muskegon.

"*A.* Yes, sir.

" *Q.* Can you repeat the conversation now, please?

"*A.* I cannot, only in substance.

" *Q.* Well, give it to us in substance then.

"*A.* Well, sir, I showed him that paper,—that agreement,—and told him that Mrs. Crozier wanted her sheep, or the money for it; and I remember of telling him that I had been wanting to see him for some little time, and never happened to catch him. He looked it over, and told me that he had let her father, Mr. Joel D. Lindsay, have the sheep; had settled with him; and I expressed surprise to him that that was the condition of affairs. I told him I would see or write the old gentleman, and find out, and I wouldn't make him any trouble until I did find out. That is about all that Mr. Partrick and I said at that time at the depot.

" *Q.* Can you tell how long that was before the suit was commenced?

"*A.* I can't to a certainty; no, sir. My idea of it is that the suit was tried in the latter part of July or August, and I should say that this was some two or three months prior to that time,—some time along in the spring."

The object of proving a demand and refusal, or neglect to deliver upon demand, is to establish a conversion. They do not constitute the conversion, but may be evidence of it. *Daggett v. Davis*, 53 Mich. 35. It does not follow that they are the only possible evidence of it. *Hake v. Buell*, 50 Mich. 89. Here it appears that the sheep had been turned over to another, and that it was not in defendant's power to deliver them. Moreover, he had been asked for them twice, and finally threatened with suit, but did not comply with the request. This was sufficient evidence of conversion and of demand to warrant the submission of the case to the jury.

Judgment affirmed.

The other Justices concurred.